HARRY MASSER, sometimes known as Harry Messer, and MORRIS BARON, *Appellants*, vs. THE LONDON OPERATING COMPANY, a corporation, *Appellee*.

145 So. 72-79.

En Banc.

Opinion filed August 23, 1932.

Petition for rehearing denied November 2, 1932.

Motion to Recall Mandate denied December 12, 1932.

476

*Aronovitz & Goldstein, Vincent C. Giblin,* and *R. A. Johnston,* Solicitors for Appellants;

*John C. Sullivan, Price, Price & Hancock, Otto C. Stegeman, David B. Newsom, William B. Farley,* and *Carl T. Hoffman,* Solicitors for Appellee.

DAVIS, Commissioner.—The appellants, whom we will refer to as the lessees, and the appellee, whom we will refer to as the lessor, under date of April 15, 1930, entered

into a written agreement, "wherein the Lessor leased to the Lessees a hotel building, known as THE LONDON ARMS HOTEL, located at Miami Beach, Florida, for a period of three years after November 1st, 1930. The Lessor agreed to deliver possession of the property to the Lessees on November 1st, 1930. The Lessees agreed to pay to the Lessor, as rental for the property forty-five thousand dollars ($45,000.00). Five thousand dollars ($5,000.00) of the rental was paid upon the execution of the agreement, ten thousand dollars ($10,000.00) was payable on November 1st, 1930, seventy-five hundred ($7500.00) on February 15th, 1931, fifteen thousand dollars ($15,000.00) on November 1st, 1931, and seventy-five hundred dollars ($7500.00) on November 1st, 1932. The ten thousand dollars ($10,000.00) payable on November 1st, 1930, was paid November 3rd, 1930, the date upon which the Lessees went into the possession of the leased property. In the agreement of lease, the Lessor covenanted as follows (Tr. 17): 'that it will paint the woodwork, walls and ceilings of the sleeping rooms and halls of the premises and will complete the solarium on half of the roof in the following manner on or before November 1st, 1930: to-wit: to build a slat wooden floor with a six-foot partition in the middle and a four-foot screen on the outside, pipe and canvas to be approved by the Building Inspector.' "

The agreement also contains among others, the following provisions:

" '10. That the lessees have examined and know the condition of the premises and will receive and accept same in its present condition on November 1, 1930, with the exception of the painting and completion of the solarium as herein provided for.' "

On March 25th, 1931, in a suit theretofore commenced in Dade County, Florida, by the lessees, complainants filed their amended bill of complaint for specific per-

formance of certain covenants of the lease alleged to be binding upon the lessors, and for an injunction restraining the lessor from bringing summary ouster proceedings for the non-payment of the installment of rent in the amount of $7,500.00 which became due and payable on February 15, 1931. A demurrer to the amended bill was filed the said 25th day of March, and on the same day an order of the court was filed overruling the demurrer and temporarily restraining the lessor from "enforcing a forfeiture of the lease, described in the amended bill, for non-payment of the Seventy-five Hundred ($7500.00) Dollar installment of rent due to the Defendant on the 15th day of February, A. D. 1931, as described in the amended bill, and from filing proceeding at law, or otherwise interfering with the possession by the Complainants of the premises described in the amended bill of complaint and in the said lease; PROVIDED that the said Complainants shall first pay into the registry of this Court to the Clerk thereof, subject to the further orders of the Court in this cause, the said sum of Seventy-five Hundred ($7500.00) Dollars, on or before the 25th day of March, A. D. 1931," and providing also for the filing of a bond before the injunction should become effective. The said sum of $7500.00 was paid into the registry of the Court and the said bond was given pursuant to the terms of the order. On the 3rd of April, the lessor filed a motion to dissolve the injunction and on the 6th day of April, 1931, the lessor filed an answer to the bill. The motion to dissolve the injunction came up for a hearing and thereupon the Court, on May 13, 1931, ordered and decreed that the said injunction be dissolved and set aside. From this order the lessee appealed to this Court. The appeal did not stay the suit, so the cause proceeded to a final hearing after it had been referred to a Master before whom a great volume of tes-

timony was taken. The final decree omitting the names of the parties, reads as follows:

"The above styled and entitled cause comes on before this court for final hearing and upon exceptions filed by the complainants to the report of the master, and upon defendant's petition for an order requiring the Clerk of this Court to pay to the defendant the Seventy-five Hundred Dollars ($7500.00) now in the registry of this court in this cause, and argument of counsel for the respective parties having first been had, and the court being fully advised in the premises, it appears unto the court that said bill is without equity, (which makes it unnecessary to consider the master's report and exceptions thereto) and it further appearing unto the court that there is paid into the registry of this court the sum of Seventy-five Hundred Dollars by the complainants herein as an installment of rent due the defendant on the 15th day of February, 1931, and that same has been paid into court pursuant to an order of this court made on the 24th day of March, 1931, and that said payment was made as appears by said order subject to the further orders of this court in this cause,

IT IS CONSIDERED, ORDERED, ADJUDGED AND DECREED that

(1) Said cause be and the same is hereby dismissed without prejudice, however, to the rights of the parties;

(2) That the said sum of Seventy-five Hundred Dollars ($7500) deposited in the registry of this court be paid by the Clerk of this Court on or after the 1st day of February, 1932, to the London Operating Company to be applied upon that installment of rent falling due on the 15th day of February, 1931, as described in said bill of complaint and amended bill;

(3) That the defendant, The London Operating Company, a Florida corporation, do have and recover of and from the complainants, Harry Masser, sometimes called Harry Messer, and Morris Baron, the cost of these proceedings, to be hereafter taxed."

From this decree the lessees took an appeal. At the request of appellants, the two appeals have been consolidated here and argued together.

Upon the appeal from the interlocutory order appellants have assigned as error the ruling of the court in dissolving and setting aside the temporary injunction theretofore granted. Upon the appeal from the final decree the appellants have assigned as error the making of said decree; the order dismissing the cause, and also ''its order of final decree in that it was error for the Court to direct the clerk of the court to pay to the LONDON OPERATING COMPANY, on or after February 1st, 1932, the sum of $7,500.00, deposited in the registry of the court by the complainants, which sum as directed by the Court was to be applied upon the installment of rent falling due on February 15, 1931, as described in the Amended Bill of Complaint.''

If the bill as amended is without equity, and no error was committed by the court in dismissing the cause for that reason when it came up for final hearing, it follows that the order dissolving the said injunction from which the first appeal was taken, should be affirmed.

In the brief filed here in support of the appeal from the final decree, the able solicitor who signed it says:

''I cannot argue with conviction that the chancellor below erred in dismissing the cause, *upon the sole ground* that the amended bill is without equity, although the appellee's demurrer to the amended bill had been previously overruled by another judge and the cause had progressed to a final hearing after the taking of the proofs. It will not be my purpose, therefore, to argue the appellant's first or second assignment of error, both of which are predicated upon the dismissal of the amended bill for want of equity.''

But he also says:

''It is well to state, however, that my associate counsel entertain the conviction that the amended

bill does state a cause for equitable relief; but it is unnecessary for them to file another brief upon this appeal because their views are fully set forth in a brief filed in this Court upon another appeal, which was from an interlocutory order in the cause.''

Since the question raised upon the appeal from the interlocutory decree is not argued by appellants to sustain the appeal from the final decree, we deem it best to decide whether or not the Court erred in dissolving the temporary injunction.

Upon the appeal from the interlocutory decree, lessees contend merely that the lessor breached its covenant to paint, resulting in damage to the lessees, that the lessor threatened to commence summary proceedings to oust the lessees from the property for the non-payment of rent, and that an action at law for damages is not adequate relief to lessees.

It has been declared repeatedly by this Court, that the granting and dissolving of temporary injunctions lies in the sound discretion of the Court. See I. R. S. Co. vs. E. C. Tr. Co., 28 Fla. 387, 10 So. 480, 29 A. S. R. 258; Shaw v. Palmer, 54 Fla. 490, 44 So. 953; Godwin vs. Phifer, 51 Fla. 441, 41 So. 597; Thursby vs. Stewart, 103 Fla. 990, 138 So. 742.

Before the temporary injunction was granted, certain testimony was taken before the chancellor, and certain affidavits were filed in the cause before him. The lessor filed its answer to the bill before the motion to dissolve the said injunction was heard. This answer which was sworn to, took sharp issue with the allegations of fact set out in the bill, and particularly denied the allegations relating to a breach of lessor's covenant to paint the woodwork, walls and ceilings of the sleeping rooms and halls, and also the allegations relating to threatened summary proceedings to oust lessees from the premises. Under such circumstances where an application is made to dis-

solve an injunction, though the bill may not be without equity, the chancellor must be governed by the weight of the evidence, and unless his ruling is clearly against the weight of the evidence, it will not be reversed on appeal. See Baya vs. Lake City, 44 Fla. 491, 33 So. 400; Richardson vs. Kittlewall, 45 Fla. 551, 33 So. 984; High vs. Jasper Mfg. Co., 57 Fla. 437, 49 So. 156; Ogden vs. Baile, 69 Fla. 458, 68 So. 671.

Here, even though we should hold that lessees have a right to withhold a due payment of rent where, because of a violation of the covenant to paint the woodwork, walls and ceilings of the sleeping rooms and halls, a question we do not at this time decide, and that they are entitled to an injunction where summary process for the removal from the property is threatened because of their refusal to pay rent, we cannot say that the order dissolving the injunction was against the weight of the evidence that was before the Court. It follows that the interlocutory order dissolving the injunction must be affirmed.

Since the only question argued here in the brief of appellants upon the appeal from the final decree is involved in the assignment of error addressed to that part of the decree which directed the Clerk of the Court to pay to the lessor the said sum of $7500.00 deposited in the registry of the Court by the lessees, we will not consider any other question upon such appeal.

In and by their bill the lessees offered and thereby tendered into the registry of the Court $7500.00 in cash, "so that the lessor will be secured for the payment of the sum of money which is due to it, the said sum of money to be held in the registry of the Court at the direction and order of the Court as may seem proper and meet to this Honorable Court," and they prayed that

they be permitted to deposit the said sum in the registry of the Court.

The prayer asks for an accounting and that "such amounts as are found to be due to your complainants shall be deducted from the amount paid into the registry of the Court and the balance delivered to your defendant." The cause was dismissed because it was determined and declared by the Court that the "bill is without equity," and it is conceded by appellants that the decree is proper in that respect. Now, the question arises, did the Court commit error in decreeing that the said sum of $7500.00 be paid to the lessor to be applied upon the installment of rent which was due on February 15, 1931?

The bill indicates that the lessees had a claim for unliquidated damages growing out of alleged violation of certain covenants of the lessor, the amount of which they desired to have the Court assess and deduct from the said sum of $7500.00, and that they deposited the money in the registry of the Court with authority to the Court, after deducting the amount found to be due the lessees, to deliver the balance to the lessor.

It is the contention of appellants that the decree in effect gave the defendant, the lessor, a judgment for $7500.00 for rent due February 15, 1931; that the money was deposited as a condition precedent to the obtaining of certain relief and not as a tender to satisfy the lessor's claim for rent, and that the decree, in effect, says to the complainant: "We have taken your money and will not return it to you, nor will we give you any of the relief you have sought."

It appears from the bill that a tender of the money was not made for the purpose of meeting the installment of rent due on the 15th day of February, 1931, in the event the suit should be dismissed, but that it was

deposited with the intention, as we gather it from the allegations of the bill, of having the differences apparently existing between lessor and lessees adjusted, and that such sum be held at the "direction and order of the Court as may seem proper and meet." One of the conditions imposed by the Court for the issuance of the injunction, was the payment of said sum of $7500.00 into the registry of the Court, "subject to the further orders of the Court." This condition was imposed, no doubt, because of the offer contained in the bill.

In the light of what is shown by the bill, we cannot ascribe to the Court the intention, when the injunction order was made, to summarily dispose of the said sum of $7500.00, in the event the cause should be subsequently dismissed, without an accounting and assessment of damages, if any, sustained by lessees. The bill could well be without equity and yet the lessees could have a claim against the lessor enforceable in an action at law.

We do not understand that the Court, without the consent of the lessees, had the right, in this proceeding, to decree that the said sum of money be paid to the lessor to be applied upon the installment of rent that fell due on February 15th, 1931. The lessees offered to do equity by offering to pay money into the registry of the Court and have the Court deduct therefrom such amount as the Court might find upon an accounting was due them, and after making such deductions, deliver to the lessor the balance. Before making effective the order for an injunction, the Court required lessees to comply with the terms of the offer. However, no accounting was had because the cause was dismissed for the reason that the bill was without equity. The cause having been dismissed for want of equity in the bill without accomplishing the purpose for which the money was offered as a deposit, the Court was without authority to make and enter a

decree in this proceeding that said sum be paid to the lessor. It follows that the Court committed error in making such a decree.

As a general rule, the payment of money into Court passes the title to the money so paid irrevocably to the party to whom it is tendered though he does not accept the tender, or does not accept it until after judgment has gone against him. 26 R. C. L. 656; Mann vs. Seneca Sprout, 185 N. Y. 109, 77 N. E. 1018. 5 L. R. A. (N. S.) 561 and note, 7 Ann. Cas. 95; Sims vs Hardin, 132 Miss. 137, 95 So. 842; Fox vs. Williams, 92 Wis. 320, 66 N. W. 357; Supply Ditch Co. vs. Elliott, 10 Colo. 327, 15 Pac. 691, 3 A. S. R. 586; Ye Sang Co. vs. Corbitt, 7 Sawy. 368, 9 Fed.; Coghlan vs. S. Car. R. Co., 32 Fed. 316; Parker vs. Beasly, 116 N. C. 1, 21 S. E. 955, 33 L. R. A. 231; Note 73 A. L. R. 1281; Stolze vs. Milwaukee, etc. R. Co., 113 Wis. 44, 88 N. W. 919, 90 A. S. R. 833; 38 Cyc. 176.

When, however, a party seeking affirmative relief has paid money into court upon condition that the party paying received something in return therefor, or that a contingency happen, it cannot be delivered to the adversary party until the condition upon which it was paid has been performed, or the contingency occurs. The proposition is well stated in 26 R. C. L. 658, as follows:

When one is not defending against a claim but is seeking affirmative relief to which, as a condition precedent, it is essential that he tender an amount due, the payment of the money tendered into court does not transfer the title to the other party, but it remains in the one making the tender subject to the final outcome of the suit. To hold otherwise would make the payment of money into court under the circumstances an exceedingly dangerous trap for one to enter, for, if he failed in the action, he would not only lose the right which he claimed but would also lose the

money which he paid into court for the purpose of enforcing his right.''

. See also 18 C. J. 775; Levin vs. Goodman, (N. J.) 153 Atl. 476, 73 A. L. R. 1278 and Note page 1286; Dunn vs. Hunt, 76 Minn. 196, 78 N. W. 1110.

The lessor assigned as cross error the dismissal of the cause ''without prejudice,'' their contention being that it should have been dismissed with prejudice.

> ''It is within the sound judicial discretion of the chancellor to dismiss without prejudice a bill of complaint in equity, thereby enabling the complainant to relitigate the matter in controversy, and an appellate court will not adjudge such ruling to be error, unless it is made clearly to appear that the judicial discretion thereby exercised has been abused to the material detriment of the party affected by the ruling.''

> Phillips vs. Lindsay, 102 Fla. 935, 136 So. 666; Veillard vs. City of St. Petersburg, 87 Fla. 381, 100 So. 163; Tilgham Cypress Co. vs. Young Co., 60 Fla. 382, 53 So. 939; Meffert vs. Thomas, 51 Fla. 492, 40 So. 764.

While every dismissal upon a final hearing is not necessarily an adjudication on the merits, yet the rule is that where the cause is at issue, and on final hearing, either upon pleadings and testimony, after the time for taking testimony has expired, a dismissal of the bill by the Court is deemed to be a dismissal upon the merits; this being a conclusive presumption from the record, where the order is not made ''without prejudice,'' and nothing appears to show that the dismissal was on other grounds. Da Costa vs. Dibble, 40 Fla. 418, 24 So. 911. See also 34 C. J. 792.

A decree rendered on a demurrer is equally conclusive, by way of estoppel, of the facts confessed by the demurrer, as would be a decree containing a finding of the same facts. 34 C. J. 797, 799. See also Prall vs. Prall, 58 Fla. 496, 50 So. 867, 26 L. R. A. (N. S.) 577.

A dismissal without prejudice is generally proper wherever the case has been disposed of for a reason not reaching the merits, and it is probable that the plaintiff might be able to make out a good case. 21 C. J. 639; Deem vs. Thomas, 51 Fla. 644, 40 So. 765; Meffert vs. Thomas, 51 Fla. 492, 40 So. 764.

The lessor concedes that the bill is without equity and that the decree dismissing the cause for that reason was proper. The appellees agree that the cause should have been dismissed, but say it should not have been dismissed without prejudice. Therefore, we may well assume that there is no equity in the bill.

A bill will be dismissed at final hearing, if it is without equity, even though a demurrer thereto has been overruled, or no objection has been taken by the defendant in his pleadings. 21 C. J. 636.

It is the rule that even after a case has been brought here, this Court can take notice of the insufficiency of a bill of complaint, though it has not been noticed by the defendant in the lower court, and direct a dismissal of the bill. Norris vs. Eikenberry, 103 Fla. 104, 137 So. 128; Cook vs. Pontious, 98 Fla. 373, 123 So. 765; Micou vs. McDonald, 55 Fla. 776, 46 So. 291; City of Jacksonville vs. Massey Business College, 47 Fla. 339, 36 So. 432; Williams vs. Peeples, 48 Fla. 316, 37 So. 572; Hendry vs. Whidden, 48 Fla. 268, 37 So. 571; McNeill vs. Lyons, 140 So. 921.

The action of the court in the instant case in dismissing the cause was tantamount to a reconsideration and reversal of its action on the demurrer to bill.

For a breach of a lessor's covenant, the lessee may have an action at law for his damages. 36 C. J. 795; Annotation 28 A. L. R. 1450.

The allegations of the bill show a probable right of

lessees to an action at law against the lessor for breach of covenant.

The Court having concluded that "the bill is without equity (which makes it unnecessary to consider the Master's report and exceptions thereto)," no abuse of sound judicial discretion of the Chancellor in dismissing the cause without prejudice has been shown. See Boyd vs. Hunter, 104 Fla. 561, 140 So. 666.

The cause is remanded to the lower court with directions to reform its final decree so that it will conform to the views herein expressed.

PER CURIAM.—The record of this cause having been considered by the Court and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered and ordered by the Court that the interlocutory order of the Court below, dissolving the injunction be and the same is hereby affirmed, and that the decree of the court below dismissing the cause be and the same is hereby affirmed in part and reversed in part, and that the said cause is remanded to the lower court with directions to reform its final decree so that it will conform to the views of the Court as set out in the said opinion.

BUFORD, C.J., AND WHITFIELD, BROWN AND DAVIS, J.J., concur.

ELLIS AND TERRELL, J.J., not participating.

---

### ON REHEARING.

PER CURIAM.—Upon petitions for rehearing filed by The London Operating Company, appellee, it is suggested that the opinion of this Court filed August 23, 1932, remanding the cause to the lower court with directions to reform its final decree so that it will conform to the views stated in the appellate court's opinion, works inequitable

consequences to the appellee, for which reason a rehearing should be awarded.

Bonds were given for the protection of the landlord and the order of the Supreme Court does not direct what ultimate disposition should be made of the money which has been paid into the registry of the Court. Upon that question this Court did not think that it was proper to summarily determine what should be done with that money merely because the dismissal of the bill of complaint without prejudice was approved. This is so, because it was taken for granted that the lessor might seek to take further appropriate steps either in this case of in a new one, to subject the fund, if it felt that its rights were not sufficiently protected by the bonds on file, and that therefore this fund, which was deposited as *security* for payment of rent, should be applied as payment.

In view of the doubt which seems to be entertained about the effect of our previous opinion and judgment, we now modify our opinion and judgment to such effect as to confrom to the views herein expressed and to direct that the entire decree be set aside, and the cause be remanded to the court below with directions to have such further proceedings and enter such amended new decree as will be according to right and equity and not be inconsistent with the views expressed by this Court as to the law governing the rights of the respective parties as set forth in this Court's opinion of August 23, 1932.

Judgment of appellate court modified and petition for rehearing refused.

BUFORD, C.J., AND WHITFIELD, ELLIS, BROWN AND DAVIS, J.J., concur.

TERRELL, J., not participating.

DAVIS, Commissioner.—On December 14, 1931, the appellants, as complainants, filed in the Circuit Court in and for Dade County, Florida, their bill of complaint

wherein they prayed "for a temporary restraining order enjoining and restraining the appellee from further maintaining or prosecuting a certain summary action or proceeding, wherein the appellee is plaintiff and the appellants are defendants, pending in the County Judge's Court of Dade County, instituted by the appellee for the recovery of the possession of certain hotel property which it had leased to the appellants. The appellants also prayed that, upon final hearing, the temporary injunctive order be made permanent."

It is shown by the bill that complainants went into possession of the property on November 3, 1930, by virtue of that certain lease which was involved and referred to in the opinion filed at the present term in certain causes pending here where the parties appellant and appellee are the same as in the instant case.

The lease, which is made a part of the bill of complaint, provides that "if for any reason default is made on the payment of rent herein required, the lessor may at its option declare the lease at an end and may immediately re-enter and retake the premises and repossess the same as in their former estate." The lessees, who are the appellants here, covenanted and agreed with the lessors as follows:

"12. If the premises shall be damaged by fire or other cause so as to be capable of being repaired within a reasonable time, the Lessor shall have the option to repair the same and during the time that the repairs are being made the Lessor shall remit to the Lessees a just and fair portion of the rent according to the nature of the damage sustained and according to the extent that the Lessees are deprived of the use of the said premises; provided, however, that should said premises be damaged by fire or other cause during the summer months and the same be repaired by Lessor before December 1st of said year, then said Lessees shall not be entitled to any damages or

remittances of rent because of the deprivation or loss of the use of the premises occasioned to the Lessees by reason thereof.

13. It is understood and agreed that no waiver of any condition or agreement in this instrument contained or acquiescence in any breach thereof shall be taken to constitute a waiver of any subsequent breach and that no damage to or destruction of any of the buildings on the premises by fire or otherwise shall be taken to entitle the Lessees to surrender the demised premises nor have the effect of terminating this lease."

Among the covenants of the lessor is the following: "That lessor shall keep in good state of repair the roof and outside walls of the building."

It is alleged in effect that the lessor prior to the 26th day of October, 1931, breached and violated its said quoted covenant "for that during the summer of the current year the said roof and the said walls became and were in bad repair for the want of needful and necessary reparation thereof and became and were leaky and incapable of providing proper and adequate protection against the entry of rainwater into the said hotel building and a large number of the rooms therein; that the complainants, subsequent to the said covenant and agreement and prior to the said 26th day of October, A. D. 1931, had frequently and repeatedly advised and informed the defendant of the said defective condition of the said roof and the said walls and had demanded of and from the defendant a compliance with, and performance of, its said covenant and agreement; that notwithstanding such frequent and repeated advice and information and such demands the defendant had, prior to the said 26th day of October, A. D. 1931, neglected, failed and refused to place and put the said roof and the said walls in good state of repair and the same were, on the said last mentioned date, still in bad repair for the want of

needful and necessary reparation thereof and were still leaky and incapable of providing proper and adequate protection against the entry of rainwater into the said hotel building and certain of the rooms therein;'' that heavy rains had fallen in the locality of the said hotel and, by reason of the defective condition of the roof and the said walls, quantities of rainwater had entered the said building and had caused great damage and injury to the building, and had depreciated the rental value thereof to the damage of the lessees; that because of the breach of said covenant of the lessor, the complainants had, prior to the said 26th day of October, 1931, decided and determined to terminate the said lease, abandon the said premises and relieve themselves from further liability, which decision they communicated to the lessor on October 26, 1931; that thereupon on said 26th of October, 1931, ''the defendant and the complainants made and entered into a contract and agreement wherein and whereby the defendant, for and in consideration of the premises and agreements on the part of the complainants, as hereinafter set forth, promised and agreed on its part that it would within a reasonable time after the said 26th day of October, A. D. 1931, place and put the said roof and the said walls in good state of repair, that the payment by the complainants to the defendant of the sum of fifteen thousand dollars ($15,000.00), originally stipulated in and by the said lease agreement to be paid for rent by the complainants to the defendant on the 1st day of November, A. D. 1931, should be postponed and deferred until such time as the defendant should place and put the said roof and the said walls in good state of repair, that the payment of the said sum for the rent by the complainants to the defendant should be dependent upon the defendant's placing and putting the said roof and the said walls in good state of

repair and that the defendant would not, unless and until it should have placed and put the said roof and the said walls in good state of repair, institute any action or proceeding for the recovery of the possession of the said demised premises because of the non-payment by the complainants to the defendant of the said sum of fifteen thousand dollars ($15,000.00) for rent;'' that, in the execution and fulfillment of their said agreement, the lessees continued in possession of the premises from and after October 26th, 1931, had expended large sums of money that it would not have expended otherwise, in fitting, equipping and furnishing and preparing the building for use and operation during the current winter tourist season, and had waived their right to terminate the lease agreement, abandon the said premises and relieve themselves from further liability for rent under the said lease agreement; that notwithstanding said promises and agreements, the said roof and the said walls are in bad repair, leaky and incapable of providing adequate protection against the entry of rainwater into the said building to the damage of complainants; that on the 27th of November, 1931, the lessor served written notice upon the complainants, requiring them to pay within three days the sum of $15,000.00, which was due and payable on November 1, 1931, or surrender possession of the premises to the lessor. It was further alleged that within three days from the service of said notice, a writ of garnishment that issued out of a Justice of the Peace Court in a cause wherein the lessor is defendant was served on the complainants, and that on the 30th day of November, 1931, the complainants were served with a certain other writ of garnishment that issued out of the Civil Court of Record in a cause wherein the lessor is defendant; that the lessor was apprised by the complainants of the service of said writs of garnishment;

that notwithstanding such apprisal, the lessor persisted in its demand upon complainants to pay the said sum· of $15,000.00; that if complainants were due the said lessor as claimed by it, the said sum of $15,000.00 for rent, it could not have, after the service upon them of said writs of garnishment, paid the sum without assuming and incurring the risk of double liability and without being required to correctly determine at their peril the question of the liability of the lessor to the plaintiffs in the said causes and the question of whether the said writs of garnishment had been properly sued out; that notwithstanding the promises and agreements of lessor, and notwithstanding that said garnishments were in full force and effect, the lessor on December 1, 1931, instituted in the County Judge's Court of Dade County, summary proceedings for the recovery of the possession of said premises for the non-payment of the said sum of $15,000.00, and that it was its purpose to prosecute the same to final judgment.

It was further shown that on December 1, 1931, subsequent to the institution of said summary proceeding, the lessor addressed a communication to complainants whereby complainants were authorized to pay one H. H. Eyles the sum of $617.85 to be credited and applied to the said sum of $15,000.00 claimed by the lessor, and that pursuant thereto one of the complainants paid to the said Eyles the said sum of $617.85; that lessor is hopelessly insolvent; that the said premises are encumbered by valid and subsisting liens securing the payment of an aggregate sum in excess of the fair market value of the said premises and leased furniture, and that said liens were then being foreclosed, and that unless the complainants shall be permitted and allowed to deduct the cost of placing said roof and walls in good state of repair and the damage sustained by them by reason of the breach

by the lessor of its covenant to keep the said roof and its walls in repair, they will be without adequate remedy at law or in equity.

The lessor moved the Court to dismiss the bill upon a number of grounds, one of which was that there is no equity in the bill. This motion came up for a hearing and the bill was dismissed. From the order dismissing the bill an appeal was taken to this Court.

The sole question presented by appellants is: Does the bill of complaint present a case of equitable cognizance and show appellants to be entitled to the aid of a court of equity?

Under Section 33, Chapter 14658, Laws of Florida, 1931, page 57, the sufficiency of a bill of complaint must be tested by a motion to dismiss, and if it is without equity it should be dismissed. McNeill vs. Lyons, 105 Fla. 243, 140 So. 921.

A bill is not without equity if it states any ground for equitable relief. Williams v. Dormany, 99 Fla. 496, 126 So. 117, and authorities there cited.

Insolvency alone is not ground for an injunction; some equity must be superadded to the insolvency. Pensacola & Ga. R. R. and Atl. & Gulf Cen. R. R. vs. Spratt & Callahan, 12 Fla. 26; Godwin vs. Phifer, 51 Fla. 441, 41 So. 597; Simmons vs. Williford, 60 Fla. 359, 53 So. 452.

An injunction should not be granted when complainant has a full, adequate and complete remedy at law. McClelland vs. Marion Holding Co., 103 Fla. 646, 137 So. 887; First Nat'l Bank vs. Mackenzie, 100 Fla. 1674, 131 So. 790. Williams vs. Dorman, 99 Fla. 496, 126 So. 117; Smith vs. Powell, 80 Fla. 166, 75 So. 654; Simmons vs. Williford, 60 Fla. 359, 53 So. 452, Ann. Cas. 1912 C. 735.

It is generally held that, in the absence of a statute to the contrary, a court of equity has jurisdiction to

enjoin dispossessory proceedings instituted by landlords in cases calling for the exercise of equitable relief, as where a tenant is without an adequate remedy at law. 36 C. J. 651. See Hobbs vs. Chamberlin, 55 Fla. 661, 45 So. 988.

It is urged here that the lessees had the right to abandon the leased premises, terminate the lease and relieve themselves of any further liability; that they had decided to exercise such right, but when such intention was communicated to the lessor, it verbally promised and agreed that it would within a reasonable time after October 26, 1931, put the roof and outside walls of the hotel in good repair, and postpone the payment of the $15,000.00 installment of rent until such repairs were made, and that in the meantime it would not institute any proceeding for the recovery of the possession of the premises for the non-payment of said installment of rent; that relying upon the verbal promise of the lessor, the lessees expended large sums of money in furnishing and preparing the hotel building for use during the winter season, and that such sums would not have been spent had they not relied upon such promises of the lessor. To support their argument, lessees have cited the case of Rader vs. Prather, 100 Fla. 591, 130 So. 15. In the cited case we said: "it is generally held that equity will relieve against the forfeiture of a lease for the non-payment of rent whenever it is just and equitable to do so; the only condition precedent to such relief being the tender of payment of the arrears of rent with accrued interest. See note 16 A. L. R. 439 and cases there cited." In that case the tenant, after summary proceedings were instituted in the county judge's court to remove him from premises possessed by him, paid into court rent then due and the costs of said suit. Here, it is not made to appear that any tender of the installment of rent was

made, nor that any money has been paid into court to meet such payment. It is merely alleged that lessees are ready, able and willing, and that they offer to do whatever in equity and good conscience should be required from them to obtain the relief they seek.

If it was one of the purposes of the bill to relieve the lessees of a forfeiture of the lease for the non-payment of rent, such purpose cannot be accomplished for the reason that there has been no tender of the amount due. See 18 A. & E. Enc. Law, 2nd ed. 389; 16 R. C. L. 1146.

In Kreiss Pot. Phos. Co. v. Knight, 98 Fla. 1004, 124 So. 751, we said:

" 'Tender' has a definite legal significance. It imports not merely the readiness and ability to pay the money or to deliver the deed or other property, at the time and place mentioned in the contract, but also the actual production of the thing to be paid or delivered and an offer of it to the person to whom the tender is to be made. Holmes v. Holmes, 12 Barb. (N. Y.) 137, 144; 38 Cyc. 131; Hunt on Tender, 3.

"A pleading setting up tender of payment in money as a defense to a suit, to be good, must show a production of the money to be paid and offer of it to the person to whom it should go, and that the debtor has ever since been ready to pay. A mere offer to pay is not a tender of money. Lindsay v. Matthews, 17 Fla. 575, 589; Greeley v. Whitehead, 35 Fla. 523, 17 So. 643, 28 L. R. A. 286, 48 Am. St. Rep. 258.

"Furthermore, the pleading must be accompanied by a payment of the money into the court. Forcheimer v. Holly, 14 Fla. 239; Matthews v. Lindsay, 20 Fla. 962; Caruthers v. Williams, 21 Fla. 485; Spann vs. Baltzell, 1 Fla. 301, 46 Am. Dec. 346; Greeley v. Whitehead, 35 Fla. 523, 17 So. 643, 28 L. R. A. 286, 48 Am. St. Rep. 258; Haughey v. Heaney, 89 Fla. 102, 103 So. 400."

See also Gus' Baths, Inc. vs. Lightbown, 101 Fla. 1205, 135 So. 300.

Unless the lessor waived its right to terminate the

lease because of the default in the non-payment of said installment of rent, it had the right under the lease to repossess the property.

In Rader vs. Prather, 100 Fla. 591, 130 So. 15, we quoted with approval the following from Section 451, Pomeroy's Equity Jurisprudence, (4th ed.):

"If there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto, either expressly or by his conduct, waives it or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary."

It is competent for the parties to a contract to enlarge the time of performance, but a promise to extend the time of payment becoming due under a contract must be founded upon a sufficient consideration (13 C. J. 592; 6 R. C. L. 917. See also Kreiss Pot. Phos. Co. vs. Knight, supra), and it is not a sufficient consideration for an agreement to extend the title of payment that the debtor promises to do anything which he is legally bound to do. 21 R. C. L. 12.

In the absence of conduct creating an estoppel, a waiver should be supported by an agreement founded upon a valuable consideration. 40 Cyc. 263.

The appellants rely upon their alleged right to terminate the lease as the consideration for the alleged parol agreement to extend the time of payment of the said $15,000.00 installment of rent. If they had no such right there could be no waiver of a non-existent right. 40 Cyc. 258.

In 1 Taylor, Landlord & Tenant, 9th ed., 334, page 404, the author says:

"The landlord's covenant to repair and the tenant's to pay rent are independent covenants and at common law a breach of the former is no defense to an action on the latter."

See also note 28 A. L. R. 1448, 1460; Arnold vs. Kirghaum, 169 Cal. 143, 146 Pac. 423; Ann. Cas. 1916 D. 370; Rubens vs. Hills, 213 Ill. 523, 72 N. E. 1127; Taylor vs. Finnigan, 189 Mass. 568, 76 N. E. 203, 2 L. R. A. (N. S.) 973; Obermeyer vs. Nichols (Pa.), 6 Binney 159, 6 A. D. 439; Stewart vs. Childs Co., 86 N. J. L. 648, 92 Atl. 392, L. R. A. 1915 C. 4649; Partridge vs. Dykins, 29 Okla. 54, 113 Pac. 928, 34 L. R. A. (N. S.) 984 and note.

Where a landlord is under an agreement to repair and fails to do so, and the premises in consequence thereof become untenantable, the tenant may abandon the premises without liability for further rent. The mere failure, however, of the landlord to make repairs the need of which does not render the premises untenantable will not warrant an abandonment of the premises or relieve the tenant from liability for rent. 18 Am. & Eng. Enc. Law, 2nd. ed. 231, 16 R. C. L. 691; Stewart vs. Childs Co., 86 N. J. L. 648, 92 Atl. 392, L. R. A. 1915 C. 649 and note.

In this case the parties foresaw the possibility of repairs having to be made during the tenancy and provided in the lease that no damage to "any of the buildings on the premises by fire or *otherwise* shall be taken to entitle the lessees to surrender the demised premises nor have the effect of terminating the lease" (italics supplied). This provision is controlling, but if it were not the bill does not show that the premises became untenantable, or unfit for the purpose for which they were leased.

The tenants themselves had a right, after waiting a reasonable time after notice to the lessor, to make the necessary repairs and deduct the expense thereof from the rent, or in an action for the rent, to set-off or recoup his damages resulting from the landlord's breach of his covenant, or to leave the premises unrepaired and sue

the lessor for the damages they may have sustained from the lessor's failure to repair. 16 R. C. L. 943; 1 Taylor, Landlord & Tenant, 9th ed., 401-2; Note 28 A. L. R. 1448, 1484.

We might add here that the bill shows that it was in the summer of 1931 that rainwater came into the building as a result of the condition of the roof and outside walls, that the alleged parol agreement was made on October 26, 1931, that the lease provides that the lessees shall not be entitled to any damages or remittance of rent because of the deprivation or loss of the use of the premises if damaged by fire or other cause during the summer months, provided the same should be repaired before December 1st, and the bill does not show that the defective condition of the roof and outside walls could not have been repaired before December 1, 1932. Taking into consideration the terms of the lease, the facts shown by the bill and the law applicable thereto, we hold that lessees on October 26, 1931, had no right to terminate the lease and that the alleged agreement of lessor to extend the time of payment of the said $15,000.00 installment of rent was not supported by a valid consideration.

It is not shown that any loss or detriment was suffered by them, or that any benefit accrued to the lessor by a waiver of such alleged right. Nor does it appear that the lessees had renounced any advantage or benefit or parted with any right which they might have exerted, and, consequently, any promise made by the lessor to extend the time of payment of the said installment of $15,000.00 rent is not binding upon the lessor.

Concluding as we do that there was no express waiver of the lessor's right to institute summary proceedings to dispossess the lessees for the non-payment of the

$15,000.00 installment of rent, the question arises: was there an implied waiver of such right?

Our statute provides as follows:

"If any person leasing or re-renting any land or house shall fail to pay the rent at the time it becomes due, the lessor may immediately thereafter enter and take possession of the property so leased or rented."
    Section 5398 (3534), Compiled General Laws of Florida, 1927.

In Baker vs. Clifford, 99 Fla. 1229, 128 So. 827, we said that the Legislature, in enacting this statute, "intended that it should be read into every contract calling for the payment of rent though it should not be set out in haec verba."

If a lessee withholds possession of property from lessor after failing to pay rent pursuant to the terms of the contract, a right to remove him is given lessor by the statute. Section 5399 (3535), Compiled General Laws of Florida, 1927.

A waiver of a covenant by the party for whose benefit it is inserted may be made by parol. Such waiver is held not to be a modification or change in the terms of the original agreement, but is deemed within the rule that a contract under seal may be released, surrendered or discharged by matters in pais. Martin vs. Martin, 98 Vt. 326, 127. Atl. 292, 55 A. L. R. 697 and Note; Becker vs. Becker, 250 Ill. 117, 95 N. E. 70, Ann. Cas. 1912 B. 275.

We have held that "waiver is the intentional relinquishment of a known right," that it does not arise from forbearance for a reasonable time, but that it may be inferred from conduct or acts putting one off his guard and leading him to believe that a right has been waived. See Rader vs. Prather, 100 Fla. 591, 130 So. 15; Kreiss Pot. Phos. Co. vs. Knight, 98 Fla. 1004, 124 So. 751.

Where the acts or conduct of a party are such as to estop him from insisting upon the right claimed to have

been relinquished, no consideration is necessary. 40 Cyc. 264.

It is necessary that the acts, conduct or circumstances relied upon to show waiver should make out a clear case. 40 Cyc. 269, 27 R. C. L. 910.

Bearing these principles in mind, was there anything in the conduct of the lessor in the instant case that could have mislead the lessees, to their prejudice, into the honest belief that a waiver of the right to institute summary proceedings for a recovery of the premises was intended or consented to by the lessor?

It is our opinion that the allegations of the bill do not sustain the contention of appellants that the lessor waived,—that is, intentionally *relinquished*—his right to institute proceedings for the recovery of the premises for the non-payment of rent. Giving full effect to the language used in the bill, it can mean nothing more than that lessor agreed to postpone the enforcement of his right.

To relinquish means to abandon, to give up, to renounce some right or thing. It affirmatively appears from the bill that the lessor had no intention to give up or renounce any right of his growing out of the contract, but that he merely agreed to defer the payment of the said installment of $15,000.00 for rent until the roof and side walls were put in a state of good repair, and until then he would not bring any court action to repossess the premises. For such agreement to become effective, it would have had to alter the terms of the lease by changing the time of payment of the said installment of rent; but to enlarge the time of payment by a valid agreement there must have been, as we have already seen, a sufficient consideration for the promise. Even then, the time when the lessor would have had the right, under the agreement, to bring summary proceedings for

possession of the premises, would have been postponed, and not the right itself. No such right could exist until there was a default, and there could be no default until the rent accrued pursuant to the terms of the contract in its altered form.

Moreover, the alleged parol agreement could not effectuate the intention of the parties because, in this jurisdiction, in the absence of a conflicting statute, the common law is in force, and by the common law, a contract under seal cannot be altered or modified before breach by a parol executory contract. Tischler vs. Kurtz, 35 Fla. 323, 17 So. 661; Horne v. J. C. Turner Cypress Lbr. Co., 55 Fla. 690, 45 So. 1016. See also, 6 R. C. L. 915 and note in 55 A. L. R. 686; 29 Am. & Eng. Enc. Law, 2d ed. 1100; 8 Am. & Eng. Enc. Law 2nd ed. 167.

Notwithstanding the fact that the lessees spent large sums of money in furnishings and improvements that they would not have spent but for the alleged parol agreement, no sufficient facts have been shown to constitute a waiver by lessor of his right to proceed summarily for possession of the said premises.

It is also contended by appellants that the service of the garnishment writs created an independent equity in their favor, and is a ground for equitable relief.

Our statutes contain the following provisions:

"The service of the writ shall make the garnishee answerable for all indebtedness due by him to the defendant, and for any goods, money, chattels or effects of the defendant in his hands, possession or control, at the time of the service of the writ or at any time between such service and the time of his answer."

Section 5289 (3436) Compiled General Laws of Florida, 1927.

"No garnishee who may be indebted to, or have in his possession the money of a person whose money or

credits may be garnisheed, shall retain out of said debt or money more than double the amount which the said writ of garnishment shall specify as the amount the plaintiff expects to recover in said suit, or the judgment he has recovered."
Section 5300 (3447) Compiled General Laws of Florida, 1927.

The lease says in effect that if default is made on the payment of *rent,* the lessor may, at his option, declare the lease at an end and may immediately repossess the property. Section 5398 (3534) Compiled General Laws of Florida, 1927, is couched in similar terms, with the exception that it does not expressly provide that a lessor may, at his option, terminate the lease. Section 5399 (3535) Compiled General Laws, 1927, and subsequent sections provide for the removal of a delinquent tenant, which remedy when invoked by a lessor in accordance with statutory requirements, results in a termination, and the consequential forfeiture of the lease. 18 Am. & Eng. Enc. Law, 2d. 378.

Much may be said by way of argument in favor of a rule that would permit a tenant to successfully resist statutory summary proceedings to recover possession of property where writs of garnishment sufficient in amount to cover the rent due the landlord have been duly served upon him. Whether or not that may be done, we are not called upon to decide. Here it is shown by the bill that the aggregate amount due the plaintiffs, at whose behest the writs of garnishmenet were issued, is *$4120.40,* or *$10,879.30* less than the installment of $15,000.00 rent. If the writs of garnishment had been served prior to November 1st, we could assume, without deciding, that it would be proper for the Court in a summary proceeding for the removal of a tenant, to permit the lessees to show by way of defense, that because of the service of such writs they withheld double the said aggregate sum

of $4120.70, as they would have a right to do in a proceeding to recover rent. (Section 5300 (3447) Compiled General Laws of Florida, 1927), and the lessor would nevertheless be entitled to the difference between such sum and the said installment of $15,000.00 as rent, and the lessees would certainly be delinquent to that extent. The services of the writs after the statutory notice was given, could not put the lessor in a less favored position. The failure of the lessees to pay any part of the rent without lawful reason, if it could be excused, was a failure "to pay rent at the time" it became due. The question to be determined in the statutory proceeding to remove a delinquent tenant is not the amount of the rent owing, but whether any rent is due, the effect being the same whether the sum is great or small (18 Am. & Eng. Enc. Law, 2nd ed. 443). To hold otherwise would be to license unconscionable tenants to dicker with debtors holding claims, small as well as large, to procure the issuance of garnishment writs against landlords, and thus defeat the very purpose for which the summary writ was provided.

The only case cited by appellants in support of its contention that the lessor should be enjoined from prosecuting the summary proceeding for their removal from the premises is O'Connor vs. White, 124 Mich, 22, 82 N. W. 664. The decision in the cited case was controlled by a local statute that "suspends a creditor's right of action for money garnished during the pendency of the (garnishment) proceedings," and the court said: "we think that this statute should be construed to apply to actions of this kind (to recover possession of premises held by a tenant), where the failure to pay rent is excused by garnishment." Here, we have no statute suspending a lessor's right of action for money that has been garnished. The statute merely authorizes the

debtor to withhold double the amount which the writ of garnishment shows the plaintiff expects to recover. Where the amount which a tenant is authorized by the statute to withhold is less than the amount of rent due, the reasoning of the court in O'Connor vs. White, supra, cannot apply.

It is our conclusion that no independent equity was created by the service of the said writs of garnishment, that would justify the Court in restraining the lessor from prosecuting the summary statutory proceeding to recover possession of the premises.

Finding no error in the order appealed from, it is hereby affirmed.

Per Curiam.—The record in this case having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, Extra Session, adopted by the Court as its opinion, it is considered, and adjudged by the Court that the order of the lower court be and the same is hereby affirmed.

BUFORD, C.J., AND WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.

ELLIS, J., dissents.

---

Opinion filed December 12, 1932.

PER CURIAM.—This case was decided by an opinion filed August 23, 1932. On November 2, 1932, the judgment here was modified and a rehearing refused. The case is now before us on a motion to recall the mandate, accompanied by an extraordinary petition for a rehearing.

The prayer to recall the mandate should be denied and the extraordinary petition for a rehearing should be refused.

The record shows that a final decree was entered by the Chancellor holding that the bill was without equity and ordering it dismissed without prejudice. The Chancellor in entering that decree expressly stated in it that

he regarded it as unnecessary to consider either the master's report or the exceptions thereto. Thus there was eliminated from consideration, by the very decree itself, all of the testimony which had been taken in the case and reported by the master.

The Chancellor also held in his final decree that it appeared that there is paid into the registry of this Court the sum of seventy-five hundred dollars by the complainants herein as an installment of rent due the defendant on the 15th day of February, 1931.'' Having reached the conclusion that the deposit in the registry of the Court had been *paid* in as rent, rather than deposited as security for the rent, the Chancellor who signed the final decree, ordered that money paid over to the defendant summarily. We say *summarily* because the Chancellor himself had just before that expressly recited the fact that he had dismissed the bill without considering either the master's report or the evidence.

This Court disagreed with the Chancellor's holding as to the precise purpose of the deposit, and in the opinion first filed in this case we expressly held:

"It appears from the bill that a *tender* of the money was not made for the purpose of meeting the installment of rent due on the 15th day of February, 1931, in the event the suit should be dismissed, but that it was deposited with the intention, as we gather it from the allegations of the bill, of having the differences apparently existing between the lessor and lessees adjusted,'' etc.

The bill having been dismissed because of insufficiency of the complainants' bill to state an equitable cause of action, the money now remains in the registry of the Court, not as a tender for summary disposition, but to be disposed of as a fund in hand ''as may seem proper and meet'' in accordance with the order under which it was deposited. Such fund being in hand, it is within the ju-

risdiction of the Court in whose custody it is, to enter-
tain appropriate proceedings for its disposition, not sum-
marily, but according to equitable principles for the pur-
pose of making restitution to the defendant for its loss
occasioned by an improvident injunction which had been
granted on an insufficient bill.

A court, having, by its own erroneous act, occasioned
a wrong, possesses an inherent and summary jurisdiction
to afford the redress, without reference to the peculiar
nature of the controversy which it had erroneously de-
termined. This is a power which is as much to be ex-
ercised where the same court abrogates its own errone-
ous decision, as where it is done pursuant to a judgment
of reversal by an appellate court. The power of a court
to repair the injury occasioned by its own wrongful ad-
judication is not derived from the mandate of an ap-
pellate court, but is an inherent power flowing from the
judicial function exercised in deciding a judicial con-
troversy under the law. Where restitution is sought at
law, the remedy is usually by *scire facias*, but where it is
sought in equity, redress may be ordered by a decretal
order, founded upon a rule to show cause, or upon motion
after notice to the adverse party. The duty of the court
to repair its own wrongs is usually regarded as manda-
tory. See cases cited with approval by us in Hazen vs.
Smith, 101 Fla. 767, 135 Sou. Rep. 813. See also Fleming
vs. Reddick, 5 Gratt. (Va.) 272, 50 Am. Dec. 119; Greg-
ory vs. Litsey, 9 B. Monroe (Ky.) 43, 48 Am. Dec. 415;
F. E. C. Ry. Co. v. 77 Fla. 577, 82 Sou. Rep. text 182.

The deposit made in the court below was of an amount
equal to the then due installment of rent due and was
expressly made "subject to the further orders of the
court in this cause." As a result of that deposit, the
complainant was enabled to obtain from the Chancellor
an interlocutory order restraining complainant from en-

forcing a forfeiture of the lease, and from filing proceedings at law, or otherwise interfering with possession by the complainant of the premises described in the amended bill of complaint. The Court when it entered the order and conditioned it upon deposit of the amount of rent due as security, no doubt anticipated that a setting aside of the injunction would entitle the defendant to an award of restitution in addition to having an action on the injunction bond, especially when it is observed from the record that the same order which granted the injunction and required the deposit, also overruled a demurrer that then challenged the sufficiency of the bill to support the award of any relief at all.

The probability that a further consideration of the case by the Chancellor in the light of the opinions heretofore filed by this court, will result in a decision on his part to allow restitution to the extent of the whole $7500.00 on deposit, presents no excuse for a failure to observe the requirements of the practice in properly arriving at whatever award is made, neither does that likelihood call for any further rehearing by this Court.

Costs incident to an appeal in equity are awarded by the judgment of the appellate court and are usually so apportioned as to do equity, where there are special circumstances which require that such costs do not follow the judgment. Grand Union Tea Co. vs. Dodds, 164 Mich. 50, 128 N. W. 1090, 31 L. R. A. (N. S.) 260.

If the appellees feel themselves aggrieved as to the costs which have been taxed against them by the Clerk in accordance with the usual practice prevailing here where no special order on the subject is made by the Court, a motion to tax or retax such costs is always in order during the term of this Court at which the case was finally disposed of. And a recall of the mandate, or the award of a rehearing, is not necessary for the consider-

ation. by us of an appropriate motion for taxing or retaxing the costs incident to, and occasioned by, our own judgment on the appeal. Shepard vs. Rand, 48 Me. 244, 77 Am. Dec. 225.

Motion to recall mandate denied.

BUFORD, C.J., AND WHITFIELD, ELLIS, BROWN AND DAVIS, J.J., concur.

TERRELL, J., not participating.